Today we have three cases for argument, beginning with 20-4068, 20-4069, Homeward Residential, Inc. v. Sand Canyon Corporation. Mr. Blacklocks, you're on. Thank you, Your Honor. Stephen Blacklocks, Hunter and Andrews Kurth for the Plaintiff Appellant, Homeward Residential, Inc. May it please the Court, the District Court held that the claims here accrued in California to an Option 1 affiliate. The District Court was wrong. The Court of Appeals decision in Deutsche Bank v. Barclays requires the conclusion that the claims accrued to the trustee, not to the Option 1 affiliate. Deutsche Bank holds that a cause of action accrues to the injured party. The claim will thus usually accrue to the plaintiff, but not because it is the plaintiff, but because usually the plaintiff is the injured party. When someone other than the plaintiff is the injured party, the claims accrue to the injured party and not the plaintiff. In short, accrual follows injury. The Court of Appeals in Deutsche Bank held that the claims accrued to the trustee, not because it was the plaintiff, but because it was charged with enforcing the originated breaches. Was this the same scenario in Deutsche Bank? The plaintiff there was similarly situated in terms of the injury to Homeward? The plaintiff in Deutsche Bank was the trustee. The plaintiff here is the servicer, Your Honor. Yes, but the New York Court of Appeals did not say we have a trustee-favoring rule. It said we have a plaintiff-favoring rule. And the trustee there was not an injured party any more than the servicer is here. It was a party that was entrusted with the ability to sue in a representative capacity on behalf of the people who were injured. How is that different? I respectfully disagree with your description of the holding in Deutsche Bank, Your Honor. The inquiry in Deutsche Bank was who was injured, and the court said whoever's been injured, that's the party to whom the claims accrued. It set up its final decision here with this introduction. The issue is where the economic injury was sustained. But the trustee wasn't injured, was it? Yes, it was, according to the court, Your Honor. I'm sorry. Explain to me how the trustee was injured. I thought that the trustee there was suing on behalf of the individual certificate holders who were injured. It was suing on behalf of the trustee, Your Honor. And what the court says there is as trustee, plaintiff is authorized to enforce on behalf of the certificate holders the representations and warranties in the relevant agreement. Excuse me. Stop right there. You said on behalf of the certificate holders. Is Homeward not authorized to enforce representations on behalf of the certificate holders? Since Homeward became the servicer in 2008, it had the obligation to enforce these claims on behalf of the certificate holders. But if I may continue the quotation from Deutsche Bank, Your Honor, it goes on to say, Accordingly, it is appropriate for us to look to plaintiff's residence as the place where the economic injury was sustained and consequently where the plaintiff's causes of action accrue. The reasoning in Deutsche Bank is not the trustee is the plaintiff, hence the claims accrue to the trustee. The reasoning is accrual follows injury. Who was injured? The trustee was injured, hence the claims accrue to the trustee. I don't think it said that at all, what you just read. It said the people injured are the certificate holders and the trustee is suing on their behalf. And the injury is therefore to the trustee. Yes, and so why is that not the same as Homeward? It is suing on behalf of those to whom the injury accrued. But the court in Deutsche Bank held there was an injury to the trustee and that therefore the claims accrued to the trustee because it suffered an injury. The dissent, if Your Honor recalls, goes into great depth to say, well, this is just a fictional injury. But the dissent doesn't deny that the holding of the court was that the injury was to the trustee because it was suing in a representative capacity and the injury. Your argument is that Homeward didn't exist back in 2006. And that's a quite different argument. Homeward did not exist in 2006. But the point is, because it's not Homeward's injury, it doesn't matter whether it existed in 2006. That's exactly right. It did not exist in 2006, had no connection with these trusts in 2006. The injury could not therefore have accrued to it. So who did it accrue to? The obvious candidate, and I believe the candidate that is identified in Deutsche Bank is the trustee. The dissent in Deutsche Bank, of course, says that the injury accrued to the Option One affiliate in California that Option One used as a conduit to get the loans and the representations about the loans to the trust. Where did the two trusts reside, so to speak? The two trusts were in California, and hence the court applied California's statute of limitations. The dissent said that you've got to look instead to the intermediaries, the conduits, and found that they were in New York, so applied New York's statute of limitations. So the injured parties were the two trusts. They resided in California. So why wouldn't California law apply if you're looking at who was injured? In this case, Your Honor, the trust in this case was South Dakota Institution. It had its main office in South Dakota, so a six-year statute of limitations applied. I thought you just said a moment ago it was California. I thought, Your Honor, I was inquiring into Deutsche Bank, and Deutsche Bank, the trusts were in California. The trust here is Wells Fargo N.A., which has its main office in South Dakota, which has a six-year statute of limitations. This district court wrongly followed the dissent in Deutsche Bank. I'm sorry. It didn't. It did not. It said, we don't care whether the dissent will ultimately prevail in a different case or whether the majority rule is what to follow, because in either case, it comes out the same way. The district court did not, flatly did not say, I'm applying the rule of the dissent. It said that you lose under either the majority or the dissenting rule. That's what it said. Your Honor, the district court expressly did not decide the issue of whether the plaintiff residence rule could apply there. It does go on to set up that dilemma, but incorrectly. There's no holding in the district court that the plaintiff residence rule applies here and identifies Homewood as the party to whom the claims accrued. It goes on to say that it found the dissent persuasive, and then it goes through the various reasons why it's persuasive and concludes that if the dissent applies, and it believes it does because it didn't reach the issue of the plaintiff residence rule, that, therefore, the claims must apply to the conduit. It seems to me that the test that you're applying is precisely the kind of complicated, fact-specific kind of test that both the majority and the dissent in Deutsche Bank said, the one thing we don't want to do is go there. The one thing we want to do is have a simple rule. And the majority came out with a plaintiff rule. The dissent came out with a different rule. The district court in this case said, you lose either way. That's the way I read all of those decisions. I gather we disagree about that. We do, Your Honor, because the inquiry in Deutsche Bank was not, who's the plaintiff? Aha, the trustee, hence the claims accrued to the trustee. The inquiry is who was injured? The trustee was injured because it was suing on behalf of the trustee. Because it never said the trustee was injured. It said the trustee is suing on behalf of the certificate holders. And, therefore, it has a representative or what the district, what the dissent would have called a notional or fictional injury. But the injury to the trustee was not that the trustee lost money. It was that the certificate holders were injured. And the trustee, as the representative party, would stand in their shoes, become the plaintiff. And the majority in Deutsche Bank says, and, therefore, we're going to, in the interest of having a simple rule, instead of trying to figure out the statutes of limitations that would apply in the case of each and every certificate holder, we'll just look to the trustee. That's what it did. Indeed, they looked to the trustee, and they looked to the trustee because the trustee was suing on behalf of the trust or the certificate holder. Exactly. That's exactly what the trustee here was charged with doing. And in 2006, when accrual happened, it was the trustee who had the obligation to enforce the claims against option one. So the situation is exactly the same as Deutsche Bank. We have a trustee who was obliged to sue, and, therefore, the trustee was the injured party. And what Deutsche Bank says is that you follow the injury. And it specifically acknowledges that when the injury is not to the plaintiff, you should look at the injury. So Homewood came on the scene two years later and took over the obligation of suing for breaches. But at the time of accrual, and that's what the court must focus on, in 2006, at the time of accrual, when Homewood didn't exist, the trustee had that obligation. Suppose the trustee changed over the course of time. Wouldn't matter. It wouldn't matter. It wouldn't matter because it would still be the trustee, not the trustee who was the trustee at the time of accrual. I'm sorry. It would be the trustee at the time of accrual. So if the trustee in 2008 had changed, like the servicer had changed, then accrual would still be to whoever the claims accrued in 2006. It must be that way, Your Honor. Accrual is once and for all. It can't change depending on vagaries of change of servicer or change of trustee. I think it can change. It can change to whatever the New York Court of Appeals says it changes. And the New York Court of Appeals has said accrual is once and for all. Accrual happens for breach of representation. When the representations are made, that's when the contract is signed. So accrual in this case was in 2006. Whoa, whoa, Mr. Blacklocks. You reserve two minutes. I've given you two extra now. We'll hear from Mr. Calhoun, and then you're up again. Thank you, Your Honor. May it please the court. I'm Mike Calhoun for St. Canyon as the appellee. As Your Honor has recognized, I believe Judge Furman's opinion said that under either approach, whether you went with Deutsche Bank, the majority opinion, or whether you went the way of portfolio recovery and followed the axiom that an assignee cannot give away more, cannot get more than the assign or had. Either way, the answer was four years. And that's what Judge Furman found. As Your Honor, I believe also recognized Deutsche Bank does not say that the injury in Deutsche Bank was to Deutsche Bank. In fact, it doesn't. It says it is a representative action commenced by the trustee for the benefit of numerous beneficiaries, which were the certificate holders. And so Deutsche Bank was in exactly the same position as Homeward in this sense that neither one of them suffered an injury here. And so following the rule of the New York Court of Appeals in Deutsche Bank, the answer would be Texas because Homeward, who is the plaintiff, who is the representative plaintiff, who is authorized under the documents, under the operative agreements to sue on behalf of the certificate holders, is the proper party to use under the Deutsche Bank decision by the New York Court of Appeals. The New York Court of Appeals left open the possibility that you might not follow that rule. And Judge Furman rightly looked at that as well and said, if you were going to look at that, you would look at the actual substance of the contracts. And if you looked at the contracts in more detail, you would see that the entity that got the representations and warranties was UMAC, which was a California company, the California residence. And he said, following the New York Court of Appeals decision in portfolio recovery, if you look at the contracts, you look at UMAC, UMAC as a California company could not have given away more rights than it had. And we know that from the New York Court of Appeals case in portfolio recovery, which dealt with a CPLR 202 claim. And so either way you looked at it, Judge Furman found rightly that the law would either be Texas if you follow the Deutsche Bank. And if it was the exceptional case where you don't follow the Deutsche Bank, it would be California. Both of those are four years. And so as Judge Furman found, either way, this case would be time barred. That's what he found. And I think he was correct to have found that. What the basis of Homeward's appeal seems to be based on, I assume it's a misreading of the Deutsche Bank decision because they simply did not go through. You cannot read Deutsche Bank and come away with the idea that the reason Deutsche Bank chose Deutsche Bank itself was because Deutsche Bank as the trustee had some kind of injury. It repeatedly says that it didn't. And that may be a rule that that in a given case someone doesn't like. And that is what that's a point that Judge Wilson made in the dissent that, OK, there are some issues with this, but cognizant of those issues that there might be with that rule. The New York Court of Appeals, nevertheless, said the rule is that you when you are dealing with a party like Homeward, who is authorized to enforce a reprimand warranty in an RMBS case, which is what that case was, you follow the plaintiff. The representative plaintiff is you look to and that is Texas. That's undisputed. And so this case should be time barred. If you if you follow the other if you follow the other rate, because because Judge Furman did look at Homeward saying because it does point out in Deutsche Bank, there might be some circumstance why that might apply. And and Judge Furman analyzed that as well. He looked at the fact that the trustee was not a party to the MLPA, the Mortgage Load Purchase Agreement, that the party that receives the representations and warranties that form the entire basis of the lawsuit is UMAC. They get UMAC, the California company, got that in the transaction in the MLPA to which the trustee is not a party. It is their legion of cases in New York that say that the MLPA, the Mortgage Loan Purchase Agreement, is breached at the time that it is executed. At the time is executed, the trustee was not a party. Therefore, the only way that the trustee got anything was when the the the rights to enforce those reps and warranties were transferred assigned to it by UMAC, a California company. Following the logic of portfolio recovery, it is axiomatic it could not have given more of a claim than it had in its four years. And so Judge Furman looked at that both ways and concluded that. Judge Furman went further, though, and looked at the other arguments that were being made, and he rejected them. For example, the idea that, well, the way homeward would have it is essentially a multi-factor test where you ask, okay, is the affiliate related? Which, by the way, skips a bunch of questions. How related does it need to be? Is it a consolidated subsidiary? Is it one where there's voting control? There's a lot of questions that you would ask if you were going to go down that route. And what you do is, if you take homeward's approach, is you look at that, and then you just write UMAC out of the contract because it's an integrated agreement. That's the homeward approach, where just on the say-so in the briefs, you just write UMAC's entire existence out of this and just pretend that the reps and warranties were given directly. So where was the economic law sustained in this case? Your Honor, it was the same as in the Deutsche Bank case. It was sustained by certificate holders, eventually, that are geographically dispersed. I mean, does the record indicate how many certificate holders there were? No, Your Honor, but it's very numerous. And so just as in Deutsche Bank, that part is exactly the same. It's certificate holders who live all over, and that's why. You can't really determine where the injury was sustained because it was undoubtedly sustained in multiple jurisdictions. That is the logic of the New York Court of Appeals decision. I think you could say. It makes sense as a logical matter to look at where the plaintiff resides. I think what the New York Court of Appeals said, it makes sense to look at the representative plaintiff looking at the party that is authorized to sue on behalf. I think what Judge Furman was analyzing on the alternative approach was that if you actually look at who the reps and warranties, who had them at the beginning, who got them at the beginning, there's no question it was UMAC. So there is no question that UMAC, a California company, in the first instance received the reps and warranties and is the party that was injured. Eventually, that injury was felt by certificate holders. But I think it just as a matter to answer Your Honor's question, as a matter of fact, the actual injury was to UMAC, a California resident who then assigned its reps and warranties, the rights to its reps and warranties, and that were eventually filtered down to certificate holders that are geographically dispersed. So I think the precise answer to Your Honor's question would be originally UMAC, a California company, it would be in California. But that was, Your Honor, a similar situation to Deutsche Bank. And the Deutsche Bank, the Court of Appeals in Deutsche Bank didn't look at it that way. They just said, we're going to use the party that was authorized to sue. Under that analysis, Your Honor, it is clear that in this case, it is Homer. And Your Honor, it was set up that way from the very beginning. When investors invested in this trust, they knew that whoever the servicer was, was going to be the party authorized to enforce the obligations. And they knew that that could change. And if in the event that it did change, as it did, if you follow Deutsche Bank in the New York Court of Appeals, you would follow Homer. Mr. Calhoun, one question. Is the trustee in this case authorized to bring a suit? So Your Honor... Could it have? I know it did not. It is not the bringer of this suit, but could it have? Yes. So the way that the contract worked is, the general rule is a servicer has the authorized to sue. But in the first instance, option one itself was the servicer. And so during that time, the trustee was authorized to sue. Is that because UMAC was an affiliate of the, in effect, the party that made the representations? No, Your Honor. I think it's more because option one mortgage, who was the originator, was also the servicer. And so the idea is, it's not because of the UMAC piece, it's because the originators of the loan were the same company as the servicers of the loan. And so it held during that period of time, it was Wells Fargo was authorized to bring suit. But is Wells Fargo authorized to bring the suit today? No, Your Honor. It could not have brought this suit. No, Your Honor. At the time it was brought. No, Your Honor. It was Homeward. The party that had to do it under the agreement is Homeward because Homeward is a servicer, and as such is authorized to, and it is the one that could bring the suit. Okay. Your Honor, I see my time is up. If there are no further questions, I would say that we believe Judge Furman's opinion should be affirmed, and I would sit down. Thank you very much, Mr Calhoun. Mr Calhoun says that the claims accrued to the certificate holders, and so accrued to the representative who was authorized to sue. Now it's true in 2008 when Homeward took over as a servicer, it became the party authorized to sue, and it did so in 2012. Between 2006 and 2008, it was the trustee. The point we must focus on, because accrual happens on breach, and that was when the contracts closed, is who at that time had the authority to sue. That was the trustee because option one was the servicer, and this is Appendix 74, Your Honor. The trustee was the representative in 2006 with the authority and obligation to sue, and it was therefore, under the reasoning even Mr Calhoun has told us, is the party to whom the claims accrued because it was injured in its capacity as representative of the trust and the certificate holders. Accrual was in 2006. Homeward did not exist in 2006. So who did the claims accrue to? It has to be to the trustee. It was not to OMAC. That is to follow the reasoning and the dissent. That is not New York law. In fact, it's inconsistent with the majority holding in Deutsche Bank because the decision wouldn't have come out otherwise if the reasoning and the dissent had been followed. There was a single integrated contract here which closed simultaneously, the whole purpose of which was to get the loans and the representations about the loans to the trustee. It makes no sense to say we're going to pass these contracts and say that, no, in fact, the claims accrued to OMAC, an affiliate of option one, which would never, ever have sued on those claims. Looking at this as an integrated contract, even if one follows the line in the dissent, there's a single contract here which had the claims and the loans and the representations going to the trustee. But the majority rule in Deutsche Bank is the rule of decision here. The claims accrued to the trustee. Thank you, Mr. Blackrock, very much. Thank you. We'll reserve decision. We thank you both for excellent arguments and we'll turn to the next question.